Weygandt, C. J.
 

 The relator contends that the respondent superintendent was guilty of an abuse of discretion ifi refusing to approve the amendments to sections 2 and 3 of article IV of the constitution of the corporation.
 

 The respondent bases his refusal on several grounds.
 

 His first contention is that the proposal to amend was not presented to the board of directors at least thirty days prior to the stockholders’ meeting, as 'required by article VIII of the constitution of the corporation.
 

 Section 9666, General Code, relating to building and loan associations provides that such a corporation may “amend ’* * * its constitution * * * by complying with all the requirements provided in its own constitution for the amendment thereof.”
 

 Was the proposal to amend presented to the board of directors at least thirty days prior to the stockholders’ meeting?
 

 Amendments were presented first at a meeting of the board on February 13, 1945. Then a stockholders’ meeting was called and held on March 20, 1945 — more than the necessary thirty days thereafter. Howjever, on this latter date a directors’ meeting was called and held several hours before the stockholders’ meeting. At this meeting of the directors certain changes were made in the proposal that had been, presented at the directors’ meeting on February 13, 1945. It was the changed proposal that was submitted and adopted at the stockholders’ meeting March 20, 1945 — the same day the changes were made. The respondent contends
 
 *383
 
 that this was violative of article VIII of the constitution of the corporation which requires" not only that the proposal must be presented to the board of directors at least thirty days previously but that “the amendment adopted shall be substantially the same as proposed.” This presents the question whether the original and the changed proposals are substantially the same.
 

 The original proposal presented at the directors’ meeting on February 13,1945, reads as follows:
 

 “Article IV.
 

 “Section 2: At all meetings of members, each member having stock of record for at least thirty days prior thereto, shall be entitled, either in person or by proxy held by a member, to one vote for each share of stock ‘except as otherwise provided in section 3 hereof,’ paid in full, and a proportionate fractional vote upon the basis of the amount paid in upon each share of installment stock so held of record by him, and each member may cumulate his votes in the election of directors.
 

 “Section 3: No member or members of any one family or families related by blood or marriage, may hereafter purchase or acquire as of record or beneficially, more than two hundred fifty (250) shares of the capital stock of The Home Savings & Loan Company. No member or members, individually or collectively, of one family or families related by blood or marriage, shall vote more than two hundred fifty (250) shares of the capital stock of The Home Savings & Loan Company at any meeting of the stockholders, irrespective of when said stock was acquired. In the event that one or more members of the same family or families related by blood or marriage, are the owners of more than two hundred fifty (250) shares of the capital stock of The Home Savings & Loan Company, the number of votes at a stockholders’ meeting that
 
 *384
 
 each is entitled to vote shall be determined on a pro rata basis of the two hundred fifty (250) shares which all members of the same family or families are entitled to vote collectively.”
 

 The changed proposal presented at the directors’ meeting on’ March 20, 1945, and adopted hy the stockholders on the same day reads as follows:
 

 “Article IY.
 

 “Section 2: At all meetings of members after March 20, 1945, each member having stock of record for at least thirty days prior thereto, shall be entitled either in person or by proxy held by a member, to one vote for each share of stock paid in full and a proportionate fractional vote upon the basis of the amount paid in upon each share of installment stock so held of record by said member, except that no member shall vote more than twenty shares at any election or meeting held by the stockholders.
 

 “Section 3: No member or members'of any one family owning two hundred fifty (250) shares or more of stock as of record or beneficially as of March 20, 1945, may hereafter purchase or acquire any additional shares of stock, either of record or beneficially, and no member may sell or transfer any stock to any member or members of any one family owning two hundred fifty (250) shares or more of stock as of record or beneficially as of March 20, 1945; provided, however, that nothing herein shall prevent the inheritance of stock. ‘Family’ is hereby defined to be husband, wife, sons, daughters, father, mother, brothers and sisters, whether residing in the same household or not.”
 

 A careful study of these proposals discloses that they manifestly are not substantially the same. Under the original proposal each stockholder is' entitled to one vote for each share of stock with the limitation .that no stockholder* or his family may vote more' than two hundred and fifty shares. The changed proposal
 
 *385
 
 limits the voting to twenty shares of stock per stockholder — less than one-twelfth of the figure in the original proposal and hardly substantially the same. In other words, an owner of two hundred and fifty shares of stock under the original proposal would lose more than eleven-twelfths of his voting power by the adoption of the changed proposal. The mere statement of the facts is decisive of the question; and since the two proposals are not substantially the same, the purported amendments are not valid, inasmuch as they were not presented to the board of directors at leastNhirty days prior to'the stockholders’ meeting March 20,1945.
 

 The respondent superintendent presents further objections to the purported amendments — particularly as to the legality of the provisions limiting the voting and restricting the sale, transfer and ownership of the stock. However, it is not necessary to consider these objections, inasmuch as the amendments are invalid by reason of the failure to follow the required procedure.
 

 The action of the respondent in refusing to approve the amendments was proper, and the writ of mandamus must be denied.
 

 Writ denied.
 

 Turner, Matthias, Zimmerman and Bell, JJ., concur.
 

 Hart and Sohngen, JJ., not participating.